# Supreme Court of Texas

No. 22-0388

In the Matter of T.V.T.

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

## PER CURIAM

This case concerns whether the State must prove that the victim did not consent in order to show that a child under the age of fourteen had the requisite intent to commit aggravated sexual assault of another child under fourteen. *See* TEX. PENAL CODE § 22.021(a)(1)(B), (2)(B). The court of appeals answered that question yes, but the statutory text forecloses that result. We therefore reverse the court of appeals' judgment and remand to that court for further proceedings.

The State alleged that T.V.T. committed aggravated sexual assault under Section 22.021(a)(1)(B)(ii), (2)(B) of the Texas Penal Code by "intentionally and knowingly caus[ing] the penetration of the mouth of [the complainant,] a person younger than fourteen years of age, with the sexual organ of [T.V.T.]." At the time of the offense, T.V.T. was thirteen years old and the complainant was twelve. After the State filed its petition, T.V.T. filed an application for a writ of habeas corpus, a motion for summary judgment, a motion to quash the State's petition,

and a motion to dismiss the petition. In each motion, T.V.T. argued that he did not commit aggravated sexual assault because, as a child under fourteen, he did not have the legal capacity to consent to sex. His amended application for a writ of habeas corpus argued that Section 22.021 is unconstitutional as applied.

The trial court denied each motion and T.V.T.'s habeas corpus application. T.V.T. then stipulated to the evidence,[1] agreed to the prosecutor's recommended disposition, and pleaded "true" to the charge. The trial court found that T.V.T. had engaged in delinquent conduct and entered the agreed-upon disposition, which, among other terms, placed T.V.T. on probation until he turned eighteen and required that he receive sex-offender treatment. The trial court deferred sex-offender registration on the condition that T.V.T. successfully complete that treatment.

T.V.T. appealed his adjudication.[2] The court of appeals reversed the trial court's adjudication order and rendered judgment dismissing the case with prejudice, holding that the trial court erred in denying T.V.T.'s motion to quash the petition. 651 S.W.3d 1, 6–7 (Tex. App.—Houston [14th Dist.] 2019). The court of appeals relied on this Court's opinion in *In re B.W.*, 313 S.W.3d 818, 826 (Tex. 2010), which held that children under fourteen may not be prosecuted for prostitution because

---

[1] T.V.T.'s stipulation restated the language from the statute and the State's petition. It did not include any evidence related to the complainant's consent.

[2] Although T.V.T. pleaded "true" and stipulated to the evidence, he had the right to appeal the issues raised in the written motions he filed before entering his plea and making his stipulation. *See* TEX. FAM. CODE § 56.01(n)(2). We need not address T.V.T.'s constitutional arguments today and therefore express no view regarding T.V.T.'s application for a writ of habeas corpus.

2

they lack the legal capacity to consent to sex. The court of appeals held that this same rationale applied to aggravated sexual assault and that T.V.T. therefore could not have committed aggravated sexual assault as a matter of law. 651 S.W.3d at 5–7. A concurring opinion argued that it would create an absurd result to hold that children under fourteen can be prosecuted for consensually engaging in the statutorily prohibited conduct when consent is an available defense for certain cases involving older children. *See id.* at 7 (Spain, J., concurring).

The State filed a motion for en banc reconsideration. Shortly thereafter, this Court decided *State v. R.R.S.*, in which we held that juveniles under fourteen are legally capable of committing aggravated sexual assault. 597 S.W.3d 835, 842–43 (Tex. 2020). As we noted in that opinion, aggravated sexual assault, unlike prostitution, does not require the accused to have reached any agreement with the other person. *See id.* at 842. All that is required is that the accused either intentionally or knowingly engaged in the prohibited conduct; or, as the Penal Code defines "intentionally" and "knowingly," that the accused had a "conscious objective or desire to engage in the conduct or cause the result" or was "aware of the nature of his conduct or . . . that his conduct is reasonably certain to cause the result." *Id.* at 841 (quoting TEX. PENAL CODE § 6.03(a), (b)).

In February 2022, T.V.T. turned eighteen, thus ending his probation. The next month, the court of appeals issued a supplemental opinion.[3] ___ S.W.3d ___, 2022 WL 906143 (Tex. App.—Houston [14th

---

[3] In the supplemental opinion, the court of appeals denied rehearing and, because it supplemented its original opinion to address *R.R.S.*, denied the State's motion for en banc reconsideration of its original opinion as moot. As

3

Dist.] Mar. 29, 2022).  The court of appeals again ruled in favor of T.V.T., finding two grounds for distinguishing this case from *R.R.S.*  First, the court reasoned that consent, while not a defense, can inform whether T.V.T. had the requisite intent to commit aggravated sexual assault.[4] The court therefore concluded that T.V.T. did not have the opportunity to present "contrary record evidence" regarding consent in this case. Second, the court stated that, when both the accused and the complainant are under fourteen years old and close in age, it is not always clear which person is the offender and which is the victim.  According to the court of appeals, the record indicated that T.V.T. was both an offender and a victim and that this case was therefore unlike *R.R.S.*

The question before us is whether the victim's consent may inform the determination of the accused's *mens rea* under Section 22.021(a)(1)(B), (2)(B) when both the accused and the complainant are under fourteen and close in age.  T.V.T.'s probation has ended, however, so we must first determine whether this case presents a justiciable controversy.  "[A] court cannot decide a case that has become moot during the pendency of the litigation," *Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012), because "[a]ny ruling on the merits of a moot issue constitutes an advisory opinion, which we lack jurisdiction to issue." *In re J.J.R.S.*, 627 S.W.3d 211, 225 (Tex. 2021).  The State argues that the end of T.V.T.'s probation does not make this case moot.  T.V.T. does

noted below, the court of appeals did not address whether the case itself was moot as a result of the end of T.V.T.'s probation.

[4] It is unclear whether the court of appeals was referring to the victim's consent or an accused child's legal inability to consent.  The context suggests that the court of appeals was referring to the victim's consent, but, as discussed below, the outcome is the same either way.

4

not argue to the contrary. The court of appeals did not address mootness.

We agree with the State that this case continues to present a live controversy. A juvenile's appeal of his *adjudication* is not moot simply because his disposition has ended when, as in this case, potential collateral consequences remain. *See Carrillo v. State*, 480 S.W.2d 612, 617 (Tex. 1972). For example, as the State notes, T.V.T. is not eligible for automatic sealing of his juvenile records. *See* TEX. FAM. CODE § 58.253(b)(2). The State also points to the juvenile court's discretion to require sex-offender registration regardless of whether T.V.T. successfully completed sex-offender treatment. *See* TEX. CODE CRIM. PRO. art. 62.352(c). These potential collateral consequences suffice to sustain a live controversy.

The fact that the *State* is the party seeking review does not change the analysis. The State may seek this Court's review of the court of appeals' decision, *see* TEX. FAM. CODE § 56.01(a), and the potential collateral consequences mean that a live controversy exists regardless of which party seeks review. *See, e.g.*, *Pennsylvania v. Mimms*, 434 U.S. 106, 108 n.3 (1977) ("If the prospect of the State's visiting such collateral consequences on a criminal defendant who has served his sentence is a sufficient burden as to enable him to seek reversal of a decision affirming his conviction, the prospect of the State's inability to impose such a burden following a reversal of the conviction of a criminal defendant in its own courts must likewise be sufficient to enable the State to obtain review of its claims on the merits here.").[5]

_____

[5] Merely *labeling* something as a "collateral consequence," of course, does not make it so. In *General Land Office v. OXY U.S.A., Inc.*, for example, the asserted "collateral consequences" were simply "the public interest in

5

We therefore proceed to the merits. Under the version of the statute in effect at the relevant time, "[a] person commits an offense" if that person "intentionally or knowingly . . . causes the penetration of the mouth of a child by the sexual organ of the actor" and "the victim is younger than 14 years of age[.]" TEX. PENAL CODE § 22.021(a)(1)(B)(ii), (2)(B).[6] As *R.R.S.* and *B.W.* both recognized, the victim's consent is not a defense under this provision. *See R.R.S.*, 597 S.W.3d at 842 (noting that, "if the other person is younger than fourteen, the accused cannot assert any consent-based defenses, and the offense is elevated to an aggravated sexual assault"); *B.W.*, 313 S.W.3d at 821 (noting that the Legislature "unequivocally remov[ed] the defense of consent to sexual assault" for children under fourteen).[7] Nor does a child's inability to legally consent to sex prevent that child from developing the *mens rea* necessary for aggravated sexual assault of another child. *See R.R.S.*, 597 S.W.3d at 842.

---

resolving [the case's] important question of administrative law, and the ruling's effect upon the numerous administrative hearings which are pending." 789 S.W.2d 569, 572 (Tex. 1990). Public interest in resolving an important legal question is not a "collateral consequence" at all; it is a request for an advisory opinion. And the relevant "collateral consequences" do not include ordinary consequences of the legal system, such as whether a decision might have precedential effects in *unrelated* cases. The collateral consequences here, though, are central to this very case—not to *other* cases involving *other* parties alleged to have committed similar conduct.

[6] The current version of the statute adds the phrase "regardless of whether the person knows the age of the victim at the time of the offense," *see* TEX. PENAL CODE § 22.021(a)(2)(B) (2023), but that change does not affect the analysis in this case. Unless otherwise noted, citations to Section 22.021 refer to the version in effect at the time the relevant conduct was undertaken.

[7] Aggravated sexual assault constitutes delinquent conduct under the Family Code. *See* TEX. FAM. CODE § 51.03(a)(1) ("Delinquent conduct is . . . conduct, other than a traffic offense, that violates a penal law of this state or of the United States punishable by imprisonment or by confinement in jail[.]").

6

The court of appeals nonetheless suggested that, while not a permissible defense, the victim's consent is still relevant because "it can be considered informative" of Section 22.021(a)(1)(B)'s *mens rea* requirement: that the accused must have engaged in the prohibited conduct "intentionally" or "knowingly."[8] The Legislature's choice to prohibit the use of the victim's consent as a defense, however, does not permit us to import the victim's consent into the *mens rea* analysis.[9] Such a rule would circumvent the Legislature's exclusion of a consent defense for engaging in the prohibited conduct with children under fourteen.[10]

---

[8] The court of appeals appears to rest this conclusion on one sentence in *R.R.S.* stating that, "[i]n the absence of any contrary record evidence, a juvenile's stipulation to the charges and admission to the allegations is sufficient on its own to support the trial court's adjudication of delinquency." 597 S.W.3d at 844. But such "contrary record evidence" is only relevant if consent is either an element of or a defense to the offense in the first place. As we later note, *see* note 9, *infra*, other statutory provisions do make consent either an element or a defense for certain sexual offenses. The provision at issue here, however, does not. In any event, in this case, T.V.T. stipulated to "intentionally or knowingly" engaging in the prohibited conduct. Nothing in the record suggests that T.V.T.'s conduct was not intentional or knowing; the contrary is true. Nor did T.V.T. attempt to withdraw his plea or stipulation.

[9] T.V.T. points to two cases that he asserts stand for the proposition that the victim's consent informs the accused's intent under Section 22.021(a)(1)(B). *See Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007) ("We have held that when the defensive theory of consent is raised in a prosecution for sexual assault, the defendant necessarily disputes his intent to engage in the alleged conduct without the complainant's consent and places his *intent* to commit sexual assault at issue."); *Rubio v. State*, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980) (substantially the same). However, both *Casey* and *Rubio* involved crimes in which the victim's consent *was* an available defense— so consent was obviously relevant. The issue in both cases was whether the court was permitted to admit information regarding similar acts as evidence of the defendant's intent. *See Casey*, 215 S.W.3d at 880–82; *Rubio*, 607 S.W.2d at 500–01. These cases are therefore inapposite here.

[10] We assume that the court of appeals was referencing the *victim's*

7

Nor does Section 22.021(a)(1)(B), (2)(B) leave any room for the judicial creation of a proximity-in-age exception. The plain text covers conduct between children who both are under fourteen, and the statutory context confirms that the Legislature intended to prohibit the specified conduct and to deem it delinquent even between children close in age. After all, the Legislature has expressly created age-similarity defenses for other sexual offenses, but not for aggravated sexual assault. *See, e.g.*, TEX. PENAL CODE § 22.011(e)(2) (establishing an affirmative defense for sexual assault in cases in which the victim was fourteen or older, the actor was not prohibited under certain statutory provisions from marrying or engaging in sexual intercourse with the victim, "the actor was not more than three years older than the victim," and, at the time of the offense, the actor was neither required to register for life as a sex offender nor had a previous reportable conviction or adjudication for an offense under the sexual-assault statute); *id.* § 21.11(b) (establishing a similar defense under the indecency-with-a-child statute).

Equally important, the Legislature also has addressed situations in which Section 22.021(a)(1)(B), (2)(B) applies to children close in age. In such cases, the Legislature chose not to *exempt* children, but rather to reduce the severity of the disposition: if a child accused under Section 22.021(a)(1)(B), (2)(B) is no more than three years older than the victim, the accused child cannot receive a determinate sentence. *See* TEX. FAM.

consent, but, as noted above, that court's opinion is not entirely clear. Even if the court of appeals meant to refer to the *accused's* legal inability to consent, however, we already held in *R.R.S.* that the proper inquiry is not whether the accused child was legally capable of consenting to the conduct, but whether the accused child intentionally or knowingly engaged in the prohibited conduct. *See* 597 S.W.3d at 842.

8

CODE § 53.045(e) ("The prosecuting attorney may not refer a petition [to the grand jury] that alleges the child engaged in conduct that violated . . . Sections 22.021(a)(1)(B) and (2)(B), Penal Code, unless the child is more than three years older than the victim of the conduct."). Creating a judicial proximity-in-age exception would undermine the legislative choice about how to address such cases.

The court of appeals, however, deemed proximity in age significant because, it reasoned, it can be difficult to determine which child is the offender and which is the victim when children of similar age engage in the prohibited conduct.[11] Similarly, T.V.T. argues that the statute blurs the line between offender and victim, leaving prosecutors without guidance regarding their charging decisions. Tying these points together, T.V.T. invokes the absurdity doctrine, arguing that it would create an absurd result to apply the aggravated-sexual-assault statute when both children were under fourteen and the conduct was consensual.

The absurdity doctrine is not remotely applicable. To be absurd in the legal sense, a result must be more than merely odd, "unintended," "improvident," or even "inequitable" (and we do not suggest that the statute here would qualify under any of those terms)—it must be

---

[11] The court of appeals stated that the record reflects that T.V.T. was "simultaneously both a victim and an offender," citing a probation report used at the disposition stage of this case. This report does not support the court of appeals' depiction, however. It describes T.V.T. as "the neighborhood bully" and states that T.V.T. threatened the complainant and forced him to engage in the prohibited conduct. The record also reflects that T.V.T. was a recidivist; he had been adjudicated in a different county for *the same prohibited conduct* before the incident in this case took place. Regardless, the possibility that a child could be "both a victim and an offender" does not authorize us to read an exception into the statute that does not exist.

9

"unthinkable or unfathomable." *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013); *see also* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 238 (2012) (noting that the absurdity doctrine applies to obvious technical or ministerial errors, not to what a court might view as a "substantive error[] arising from a drafter's failure to appreciate the effect of certain provisions"). The statute here clearly and specifically defines the prohibited conduct, stating that a person "commits an offense" if that person "intentionally or knowingly" "causes" the delineated conduct. TEX. PENAL CODE § 22.021(a)(1)(B)(i)–(v), (2)(B). No absurdity arises. The Legislature could have concluded—and by all indications did conclude—that engaging in the prohibited conduct with a child under fourteen is sufficiently serious that the victim's consent is irrelevant regardless of the accused's age.

Nor is the statute absurd simply because, in some cases, it may not be obvious at first glance whether one child, both children, or neither should be prosecuted for conduct that meets the statutory definition. This is hardly the only context in which determining which party should be charged as a perpetrator is left to the prosecutor's discretion. There is no need for judicial revisions to the statute to avoid absurdity. If the evidence cannot support the charges—if, for example, the prosecutor charges someone who clearly was a victim rather than a perpetrator or willing participant—the accused should prevail in court. For one thing, such an accused cannot have "cause[d]" the unlawful conduct. T.V.T. does not argue that *he* was the one forced into delinquent conduct without his consent, of course. The decision whether to charge T.V.T. in

10

light of the evidence showing that he forced his victim, especially in light of his prior offense demonstrating that he was in particular need of correction, is a classic example not of absurdity but of proper prosecutorial discretion.

Finally, T.V.T. asserts that Section 22.021 is unconstitutional for various reasons. The court of appeals did not reach T.V.T.'s constitutional arguments and, following our normal practice, we decline to do so today. To the extent that these issues have been properly preserved and are otherwise properly presented, we leave the arguments about them for the court of appeals to address in the first instance. *See In re Troy S. Poe Tr.*, 646 S.W.3d 771, 780–81 (Tex. 2022).

Therefore, without hearing oral argument, we reverse the judgment below and remand to the court of appeals for further proceedings consistent with this opinion. *See* TEX. R. APP. P. 59.1.

**OPINION DELIVERED:** September 8, 2023