

# In the Court of Criminal Appeals of Texas

No. PD-0262-20 & PD-0263-20

ANDREW JAMES TURLEY, *Appellant*

v.

THE STATE OF TEXAS

On State's Petitions for Discretionary Review
From the Fourteenth Court of Appeals
Harris County

YEARY, J., filed a dissenting opinion.

Having concluded that the court of appeals was correct in this case to hold the evidence legally insufficient to support Appellant's convictions for compelling prostitution and trafficking of persons, the

Court today proceeds to reform the judgments to reflect convictions for a lesser-*attempted* commission of these offenses. Majority Opinion at 10−12. For the following reasons, I disagree with this disposition.

## I. REMAND FOR REFORMATION DECISION

This is a State's petition for discretionary review, for starters, and the State does not argue (even in the alternative) that the judgments should be reformed to reflect a conviction for attempted commission of the offenses. And even if the State had made such an argument, the better response would be, in any event, to remand the cases to the court of appeals for that court, in the first instance, to decide whether reformation is permissible under *Thornton v. State*, 425 S.W.3d 289 (Tex. Crim. App. 2014), after supplemental briefing on that issue from the parties.[1] It is not at all clear to me that the Court's abbreviated *Thornton* analysis is correct. So I would remand this case to allow briefing and so that our consideration of the issue, later, if further

---

[1] Under *Thornton*, before it may reform a judgment to reflect conviction for a lesser-included offense, a reviewing court:

> must answer two questions: 1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support the conviction? If the answer to either of these questions is no, the court of appeals is not authorized to reform the judgment. But if the answers to both are yes, the court is authorized—indeed, required—to avoid the "unjust" result of an outright acquittal by reforming the judgment to reflect conviction for the lesser-included offense.

425 S.W.3d at 300.

discretionary review is even necessary, might benefit "from a carefully wrought decision from the court of appeals" on the question. *McClintock v. State*, 444 S.W.3d 15, 21 (Tex. Crim. App. 2014).

It is true that *Thornton* declared that a court of appeals is "required" to reform a judgment to reflect conviction for a lesser-included offense whenever its criteria for doing so are met. 425 S.W.3d at 300. And this Court has done so when acting in its capacity as an appellate court rather than a discretionary review court. *See Griffin v. State*, 491 S.W.3d 771, 776−77 (Tex. Crim. App. 2016) (reforming judgment of conviction for capital murder to reflect conviction for murder when the evidence failed to establish the aggravating element). Also, where a court of appeals has erroneously declared the evidence sufficient to establish the charged offense, and this Court, on discretionary review, has overturned that judgment—and the State has explicitly argued that the *Thornton* criteria for reformation are plainly met—we have reformed the judgment ourselves. *Nowlin v. State*, 473 S.W.3d 312, 319 (Tex. Crim. App. 2015).

But more often, in our capacity as a discretionary review court, when we have reversed a court of appeals' conclusion that the evidence was sufficient to support the greater charged offense, the Court has remanded the case to the court of appeals to conduct the *Thornton* reformation analysis in the first instance. *See Lang v. State*, 561 S.W.3d 174, 184 (Tex. Crim. App. 2018) ("The parties have not briefed this issue in this Court, and we decline to address this question in the first instance."); *Walker v. State*, 594 S.W.3d 330, 340 (Tex. Crim. App. 2020) (where the court of appeals erroneously concluded that the evidence was

sufficient to support the charged offense, "the proper course of action is to remand" for the court of appeals to conduct the *Thornton* analysis); *Edwards v. State*, 666 S.W.3d 571, 577 (Tex. Crim. App. 2023) ("Because the parties have not had the opportunity to brief [the question of reformation under the *Thornton* criteria], and the court of appeals has not had occasion to consider it, we remand the cause for further proceedings consistent with this opinion.").

This is in keeping with our general posture of remanding to the court of appeals to render a "decision" in the first instance whenever our disposition of an issue on discretionary review has raised new questions not previously addressed by the court of appeals. *See, e.g.*, *Menefee v. State*, 287 S.W.3d 9, 18−19 (Tex. Crim. App. 2009) (remand for the court of appeals to address extant issues of procedural default and harm when this Court reversed its "decision" on the merits). It is true that, "when the proper disposition of an outstanding issue is clear, [the Court] will sometimes dispose of it on discretionary review in the name of judicial economy." *Gilley v. State*, 418 S.W.3d 114, 119 (Tex. Crim. App. 2014) (citing *Davison v. State*, 405 S.W.3d 682, 691−92 (Tex. Crim. App. 2013)).

Here, the court of appeals concluded that the evidence was insufficient to support Appellant's convictions, and today this Court affirms that conclusion. But the court of appeals did not conduct *Thornton*'s "required" analysis to decide whether reformation of the judgment to reflect conviction for a lesser-included offense was appropriate. The State has not asked us in its petition for discretionary review either to conduct that analysis ourselves or remand it for that

analysis. In my view, the Court's conclusion today that reformation is appropriate is—at best—questionable. At most, then, I would remand the cases so that the court of appeals can address and "decide" that issue in the ordinary course of the appellate process, with input from the parties.

## II. REFORMATION IS NOT CLEARLY PROPER

Between the two of them, the majority opinion and the concurrence in the court of appeals came up with three reasons why the evidence was legally insufficient. The majority addressed the offense of compelling prostitution first. *Turley v. State*, 597 S.W.3d 30, 38−45 (Tex. App.—Houston [14th Dist.] 2020). This offense requires the actor to:

- "knowingly"
- "cause[]"
- "a child younger than 18 years"
- "to commit prostitution[.]"

TEX. PENAL CODE § 43.05(a)(2). "Prostitution" for purposes of this provision explicitly "means the offense defined in Section 43.02" of the Penal Code. TEX. PENAL CODE § 43.01(2). Therefore, in order to commit the offense of compelling prostitution, an actor must:

- "knowingly"
- "cause[]"
- a child under 18 to
- "knowingly"
- "offer[] to engage, agree[] to engage, or engage[] in sexual conduct"
- "in return for receipt of a fee[.]"

TEX. PENAL CODE § 43.02(a)(1).

Relying on an opinion from the Texas Supreme Court, the court

of appeals majority held, first of all, that the child at issue in this case, S.E.B., being younger than 14 years of age, simply could not commit the offense of prostitution because she lacked the capacity, as a matter of law, to commit prostitution. *Turley*, 597 S.W.3d at 43−44 (citing *In re B.W.*, 313 S.W.3d 818 (Tex. 2010)). Second, and alternatively, the majority in the court of appeals held that, in any event, because the child was asleep during the incident, she could not have formulated the requisite intent to commit prostitution, since she could not have *knowingly* offered to engage, agreed to engage, or actually engaged in sexual conduct for a fee. *Id.* at 45. For essentially the same two reasons, the majority then likewise found the evidence insufficient to support Appellant's conviction for trafficking of persons under Section 20A.02(a)(7)(H). *Id.* at 45−46; TEX. PENAL CODE § 20A.02(a)(7)(H).[2] Chief Justice Frost, in a concurring opinion, preferred a third reason to declare the evidence insufficient. She took the position that the evidence was insufficient to show that the sleeping child, in any event, offered, agreed, or engaged to do *anything*, knowingly or otherwise. *Id.* at 47−49 (Frost, C.J., concurring).

Today, without passing on the other two theories for why the evidence is insufficient, the Court endorses Chief Justice Frost's view of why the evidence was insufficient to support the convictions for compelling prostitution and trafficking of persons. *See* Majority Opinion at 7 ("We agree with Chief Justice Frost's position in so much as the

---

[2] At the time of the offense in 2015, Section 20A.02(a)(7)(H) read: "A person commits an offense if the person knowingly . . . traffics a child and by any means causes the trafficked child to engage in, or become the victim of, conduct prohibited by . . . Section 43.05 (Compelling Prostitution)[.]"

central sufficiency question in this case can be resolved through a more straightforward analysis than that undertaken by the court of appeals' majority opinion."); *id* at 9 ("[W]e agree with Chief Justice Frost that . . . there is no evidence to show that [S.E.B.] actually committed any of the requisite *acts* to establish the commission of prostituion."). So far, so good.

From there, however, the Court goes on to declare that the evidence is nevertheless sufficient to support conviction for *attempted* commission of these same two offenses, compelling prostitution and trafficking. Majority Opinion at 10−12. Without making specific reference to the *Thornton* criteria for analyzing whether reformation is justified,[3] the Court simply observes: "[T]he record clearly establishes that Appellant intended to cause S.E.B. to commit prostitution by causing her to engage in sexual conduct in return for the $1,000 payment." *Id.* at 11. But wait a minute: I thought it had already been established that the reason the evidence did not support conviction for the greater offenses was that it did not show that S.E.B. *herself* offered to, agreed to, or engaged in sexual conduct for a fee. How can Appellant nevertheless be guilty of *attempting* to commit these offenses by virtue of offering to, agreeing to, or causing her to engage in sexual conduct for

---

[3] With respect to the first of the two *Thornton* questions, whether the jury verdict necessarily also embraced every element of the lesser-included offense, particularly as it relates to the lesser-included offense of *attempt*, a reviewing court in this case would have to find as follows: that by its guilty verdict for the greater offense, the jury necessarily also determined that 1) with specific intent to knowingly cause a child younger than 18 years to commit prostitution, 2) the defendant did an act amounting to more than mere preparation that 3) tended but failed to result in causing the child to commit prostitution. *See Thornton*, 425 S.W.3d at 300−01.

a fee *himself*? If that is all it takes to prove that S.E.B. herself committed prostitution, then I fail to see how the evidence was insufficient to convict Appellant of the greater charged offenses!

It seems to me that the evidence is fatally lacking *both* with respect to the charged offenses *and* the attempt to commit those offenses. Appellant cannot be said to have committed an act amounting to more than mere preparation that tends but fails to effect the commission of the offense *intended*—TEX. PENAL CODE § 15.01(a)—when he demonstrably lacked the specific intent to cause S.E.B.—*herself*—to commit prostitution by somehow causing *her* to knowingly offer to, agree to, or engage in, sexual conduct for a fee. The seemingly uncontradicted evidence in this case shows that Appellant knew that S.E.B. was asleep because he drugged her himself, and so he could not possibly have harbored a specific intent that *she* commit any of the acts necessary to constitute prostitution, much less that she have done so knowingly. He had no specific intent to commit either of the greater offenses, which both require that S.E.B. *commit prostitution*, because he never had any intention to cause S.E.B., *herself*, to knowingly offer to, agree to, or actually engage in, sexual conduct for a fee. A stout argument is thus available that Appellant can be guilty *neither* of the charged offenses *nor* the *attempt* to commit those offenses under the facts of this case.

The Court attempts nevertheless to declare Appellant clearly guilty of the lesser offenses by virtue of a novel application of the parties principle in Section 7.02(a)(1) of the Penal Code. Majority Opinion at 11−12 (citing TEX. PENAL CODE §7.01(a)(1)). Appellant is criminally responsible for S.E.B.'s conduct for the lesser offense, the Court believes,

because acting with the intent that she commit prostitution, he caused her to engage in sexual conduct for a fee. *Id*. But "conduct" means "an act . . . and its accompanying mental state." TEX. PENAL CODE § 1.07(10). Arguably, then, to be guilty as a party under Section 7.02(a)(1), Appellant would *still* have had to cause her to *knowingly* engage in that conduct, which he knew at the time she could not. And, in any event, it is not clear, even to the Court, why this theory would not also render Appellant liable for the greater offense. *See* Majority Opinion at 12 ("Whatever implications this principle may have for the greater offenses charged in this case . . ."). The uncertainties involved only serve to support my view that the answer is far from clear, and the Court should remand for briefing and an opinion from the lower court.

There may also remain a question whether Appellant could harbor a specific intent to commit the charged offenses, for purposes of reforming the judgments to show convictions for *attempt,* if the court of appeals majority is also correct that S.E.B. simply could not commit prostitution *as a matter of law*.[4] Perhaps that is an argument that implicates the so-called doctrine of impossibility, and it might become necessary for a reviewing court implementing the *Thornton* criteria to decide whether the facts of this case show "legal impossibility" versus "factual impossibility"—a slippery distinction indeed. *See Chen v. State,* 42 S.W.3d 926, 929 (Tex. Crim. App. 2001) (observing that "the line

---

[4] If any one of the three reasons the combined court of appeals opinions articulated for finding the evidence insufficient to support conviction for the greater offenses holds water, it seems to me that it would be necessary to decide with respect to each reason whether the evidence can nevertheless support conviction for the *attempts* under a *Thornton* analysis. The Court today seems to limit its analysis to Chief Justice Frost's rationale.

between legal and factual impossibility is sometimes difficult to draw"); *Lawhorn v. State*, 898 S.W.2d 886, 891−92 (Tex. Crim. App. 1995) (plurality opinion) (distinguishing legal and factual impossibility); *id.* at 893−96 (Meyers, J., dissenting) (refusing to "accept that there is a meaningful difference between legal and factual impossibility").

## III. CONCLUSION

My ultimate point is that none of this is nearly as straightforward as the Court's opinion today seems to deem it. Rather than decide it in such an abbreviated fashion, without input from the parties or a "decision" on the question from the court of appeals, I would not reform the judgments without first remanding the cases to the lower court with instructions to resolve the *Thornton* reformation question in the first instance. Because the Court does not, I respectfully, dissent.

**FILED:**                                            June 26, 2024
**PUBLISH**